FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2015 MAR 31 AM 11:14
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ESSEX INSURANCE COMPANY, )
)
    Plaintiff, )
)
v. ) CASE NO. CV413-253
)
SEGA VENTURES, LLC; REVOLUTIONS )
NIGHT CLUB, INC.; MAMEDD, LLC; )
DERRICK WOODS; and JEROME BROWN; )
)
    Defendants. )
)

## O R D E R

Before the Court is Plaintiff's First Motion for Summary Judgment. (Doc. 47.) Defendants Mamedd, LLC ("Mamedd"), Revolutions Night Club, Inc. ("Revolutions"), Sega Ventures, LLC ("Sega"), and Jerome Brown have filed responses in opposition.[1] (Doc. 50; Doc. 54; Doc. 58.) Plaintiff has filed replies to each of Defendants' responses. (Doc. 60; Doc. 61; Doc. 62.) For the reasons stated below, Plaintiff's Motion for Summary Judgment (Doc. 47) is **GRANTED IN PART, DENIED IN PART**, and **DISMISSED IN PART**. The Court hereby **DECLARES** that Defendant Revolutions is not an insured under the policy. Plaintiff's request to withdraw its defense of Defendants Sega, Mamedd, and Woods in the underlying suit is **GRANTED**. However, Plaintiff's request to

---

[1] Defendant Woods has not made an appearance in this case and is currently in default. (Doc. 29.)

recoup its already-expended costs is **DENIED**. Plaintiff's arguments with respect to its duty to indemnify are **DISMISSED**.

**BACKGROUND**

This case arises out of an injury suffered by Defendant Brown at the hands of Defendant Woods.[2] Defendant Sega owns and operates Revolutions Nightclub in Hinesville, Georgia. (Doc. 58 at 2.) Defendant Mamedd is Defendant Sega's landlord and Defendant Revolutions is the former owner of the club. (Doc. 50 at 5.) On or about October 15, 2011, Defendant Sega was hosting a large music-filled event called "Hoodfest" at Revolutions Nightclub. (Doc. 54 at 6.) On that date, Defendant Woods was working as one of the club's security guards. (Doc. 54 at 7.) Near the end of the event, Defendant Woods's boss instructed him to go into the parking lot and "defuse" any altercations that were taking place. (Id.) Once in the parking lot, Defendant Woods encountered a number of men accosting one of his female co-workers and attempted to intervene. (Id.) Defendant Woods positioned himself between the men and his female co-worker, but was subsequently struck in the back of the head. (Id.) Upon being hit, Defendant Woods quickly turned around and punched the person he believed had struck him—Defendant Brown. (Id.)

---

[2] For the purposes of ruling on Plaintiff's Motion for Summary Judgment, the Court construes the facts in the light most favorable to Defendants. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

As a result of Defendant Woods's punch, Defendant Brown filed suit against Defendants Woods, Sega, Mamedd, and Revolutions in the state court of Liberty County, Georgia. (Id. at 8.) In that case, Defendant Brown brought negligence and assault and battery claims against Defendant Woods as well as a variety of derivative liability claims against Defendants Sega and Mamedd. (Id., Attach. 6.) Although Defendant Revolutions was originally a party to the underlying case, it has since been dismissed. (Doc. 50 at 5.)

Prior to the incident between Defendants Brown and Woods, Plaintiff issued a commercial general liability insurance policy to Defendant Sega. (Doc. 58 at 1.) Defendant Mamedd is an additional insured party under the policy. (Doc. 47 at 4.) Pursuant to the policy's terms, Plaintiff has provided a defense to Defendants Sega, Revolutions, Mamedd, and Woods in the underlying suit. (Id. at 12.) However, before undertaking their defense, Plaintiff issued a reservation of rights letter to Defendants stating that Plaintiff would discontinue its representation once the underlying suit's costs reached the policy's coverage limit. (Id.) Plaintiff then brought suit in this Court seeking a declaratory judgment that it has no duty to further defend or indemnify Defendants Sega, Mamedd, Revolutions or Woods because the policy's coverage limit had been reached. (Doc. 11)

In its Motion for Summary Judgment, Plaintiff contends that it owes no further duties to Defendants because Plaintiff's costs in the underlying suit have exceeded the policy's coverage sublimit of $25,000 for claims resulting from an assault or battery. (Doc. 47 at 13-14.) Plaintiff further maintains that it owes no duties to Defendant Woods and Defendant Revolutions because they are not insureds under the policy. (Id. at 18-19.) Also, Plaintiff argues that the policy provides no coverage for punitive damages and limits an injured party's recovery for medical expenses to only $1,000. (Id. at 19.) Finally, Plaintiff seeks to withdraw its representation of Defendants in the underlying suit (id. at 20-21), and recoup its already-incurred defense costs beyond $25,000 (id. at 22).

In response, Defendants argue that Defendant Woods was acting in self-defense and thus his actions should not be considered an assault and battery under the policy. (Doc. 50 at 4-5; Doc. 54 at 16-17; Doc. 58 at 4-8.) In addition, Defendants Brown and Sega argue that the policy's assault and battery provision is ambiguous and should not limit coverage to $25,000, if at all. (Doc. 54 at 11-15; Doc. 58 at 3-4.) Defendant Brown further contends that the policy's punitive damages exclusion and medical expenses limitation are ambiguous. (Doc. 54 at 19-21.) Defendant Brown also maintains that Plaintiff must continue its defense of Defendants because Defendant Brown's amended

4

complaint in the underlying suit includes a negligence claim. (Id. at 15.) Finally, each Defendant maintains that, regardless of the success of Plaintiff's other arguments, Plaintiff should not be allowed to recoup its already-expended defense costs. (Doc. 50 at 5-6; Doc. 54 at 22; Doc. 58 at 8-15.)

**ANALYSIS**

I. <u>SUMMARY JUDGMENT STANDARD</u>

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u> The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (<u>quoting</u> Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. <u>DeLong</u>

Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact,

6

then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. DEFENDANT WOODS AND DEFENDANT REVOLUTIONS

As an initial matter, the Court addresses Plaintiff's arguments that Defendants Woods and Revolutions are not insureds under the terms of the policy. For its part, Defendant Revolutions has admitted it is not an insured. (Doc. 50 at 5.) Accordingly, the Court finds Plaintiff has no duty to defend or indemnify Defendant Revolutions in the underlying suit. However, because Defendant Revolutions has already been dismissed from the underlying suit, the issue is moot.

Defendant Woods has not made an appearance in this case and is currently in default. (Doc. 29.) On September 19, 2014, the Court denied Plaintiff's motion for default judgment against Defendant Woods, noting that a default judgment should not be rendered against one defendant where similarly situated non-defaulting defendants remain in the case. (Doc. 64.) To do so would risk inconsistent or incongruous verdicts by the Court. (Id. at 4.) After careful consideration, the Court can discern no reason to disturb its prior order. Defendant Woods is subject to the terms of this order in the same manner as his co-Defendants. However, Plaintiff may reassert its default judgment motion against Defendant Woods at the conclusion of proceedings against the remaining Defendants.

III. <u>DUTY TO DEFEND AND DUTY TO INDEMNIFY</u>

Plaintiff has argued broadly that it has no further duty to defend or indemnify Defendants in the underlying suit. (Doc. 47 at 3.) However, in cases involving insurance coverage, the duty to defend and the duty to indemnify are distinct and analyzed separately. See <u>City of Atlanta v. St. Paul Fire & Marine Ins. Co.</u>, 231 Ga. App. 206, 208, 498 S.E.2d 782, 785 (1998) ("An insurer's duty to defend and its duty to indemnify are separate and independent obligations."). The duty to indemnify "is triggered only when the insured is determined to be liable for damages within the policy's coverage." <u>Erie Indem. Co. v. Acuity Mut. Ins. Co.</u>, 2006 WL 2048310, at *2 (N.D. Ga. July 19, 2006). As a result, the Eleventh Circuit "has cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of . . . insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured." <u>Edwards v. Sharkey</u>, 747 F.2d 684, 686 (11th Cir. 1984). District courts have frequently heeded the Eleventh Circuit's cautionary advice and declined to decide questions of indemnification liability while the underlying action is still pending. See, e.g., <u>Smithers Constr., Inc. v. Bituminous Cas. Corp.</u>, 563 F. Supp. 2d 1345, 1349 (S.D. Fla. 2008) ("[A]n insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held

8

liable in the underlying suit.") (citations omitted); (Emp'rs Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc., 387 F. Supp. 2d 1205, 1211-1212 (S.D. Ala. 2005) ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insured's liability.").

The Court can discern no reason to depart from the wise course of action embraced by the other district courts. Here, the underlying suit is ongoing and any liability has yet to be established. Should the defendants in the underlying suit prevail, any decision by this Court on Plaintiff's duty to indemnify would necessarily be moot and a waste of judicial resources. Accordingly, although the parties do not raise the issue, the Court shall follow the Eleventh Circuit's warning and not address the parties' arguments concerning Plaintiff's prospective duty to indemnify. See Nationwide Mut. Fire Ins. Co v. Dillard House, Inc., 651 F. Supp. 2d 1367, 1372-73 (N.D. Ga. 2009) (holding sua sponte that parties' duty to indemnify arguments were premature).

IV. THE ASSAULT AND BATTERY PROVISION

In this case, the policy includes an endorsement that purports to limit Plaintiff's coverage of damages—including investigation and defense costs—"which result[] from 'assault' or 'battery.'" (Doc. 47, Attach. 1 at 48.) According to the

endorsement, " '[a]ssault' means any attempt or threat to inflict 'injury' to another person including any conduct or action that would reasonably place such person in apprehension of such 'injury.' " (Id., Attach. 1 at 49.) "Battery" is defined as "the intentional or reckless physical contact with or any use of force against a person without his or her consent that results in 'injury' or offensive or abusive touching whether or not the actual 'injury' was intended or expected." (Id.) "Injury" includes both bodily injury and property damage. (Id.)

Defendants first argue that it is currently uncertain whether Defendant Woods's strike of Defendant Brown qualifies as an "assault" or "battery" under the policy. Specifically, Defendants point out that Defendant Woods maintains he hit Defendant Brown in self-defense. (Doc. 50 at 4-5, Doc. 58 at 4-8; Doc. 54 at 15-17.) Because the underlying suit has yet to resolve this factual dispute, Defendants insist that this Court cannot determine whether the incident falls within the terms of the policy's assault and battery provision.

As stated above, the Court is presently concerned only with Plaintiff's duty to defend in the underlying case. All parties agree that Georgia law applies to the policy in this case. As a result, it is immaterial whether Defendant Woods prevails in the underlying action with his self-defense argument. "[W]hether an insurer has a duty to defend depends on the language of the

10

policy as compared with the allegations of the complaint." Hoover v. Maxum Indem. Co., 291 Ga. 402, 407-08, 730 S.E.2d 413, 418 (2012). To avoid a duty to defend, the allegations of the complaint must unambiguously exclude coverage under the policy. JNJ Found. Specialists, Inc. v. D.R. Horton, Inc., 311 Ga. App. 269, 271, 717 S.E.2d 219, 223 (2011). " 'Thus, the issue is not whether the insured is actually liable to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.' " Bituminous Cas. Corp. v. N. Ins. Co. of N.Y., 249 Ga. App. 532, 533, 548 S.E.2d 495, 497 (2001) (quoting Penn-Am. Ins. Co. v. Disabled Am. Veterans, 224 Ga. App. 557, 562, 481 S.E.2d 850, 851 (1997)).

Defendant Brown alleges in the underlying suit that he "was struck in the face by Defendant Woods." (Doc. 54, Attach. 6 ¶ 9.) In addition, the Defendant Brown repeatedly alleges that Defendant Woods "punched" him. (Id., Attach. 6 ¶¶ 27, 40.) As stated above, an assault exists for purposes of the policy where there is an "attempt [] to inflict 'injury' to another person." (Doc. 47, Attach. 1 at 49.) A "battery" includes both "any use of force against a person without his or her consent" and "offensive or abusive touching whether or not the actual 'injury' was intended or expected." (Id.) As a result, the Court finds that Defendant Woods's alleged strike or punch to

Defendant Brown's face clearly qualifies as both an "assault" and "battery" for purposes of the policy. While "assault" and "battery" may have alternate legal definitions in a civil suit, the Court uses an insurance policy's defined terms when determining coverage. See, e.g., Am. Empire Surplus lines Ins. Co. v. Hathaway Dev. Co., Inc., 288 Ga. 749, 750-751, 707 S.E.2d 369, 371 (2011) (using term "occurrence" as defined by insurance policy). As Defendants do not dispute, the provision's language covers all claims "resulting from" an assault and battery, which includes Defendant Brown's derivative claims against Defendants Sega and Mamedd. See Jefferson Ins. Co. of N.Y. v. Dunn, 269 Ga. 213, 215, 496 S.E.2d 696, 699 (1998) (holding derivative claims covered by assault and battery exclusion because "but for" assault and battery by employee, there could be no claim against insured employer). Accordingly, the facts alleged in the underlying suit clearly implicate the policy's assault and battery provision.

Defendant Brown attempts to avoid the parameters of the assault and battery provisions by pointing out that the underlying complaint has been amended to include a negligence cause of action. (Doc. 54 at 16.) As a result, Defendant Brown reasons that if Defendant Woods was merely negligent in his use of force against Defendant Brown, the policy's assault and battery provision should not apply. (Id.) However, the Court

finds this argument without merit. Even if Defendant Woods's punch or strike was somehow the result of mistaken identity, the policy's assault definition makes no exception for attempts to injure that are the result of negligence. In addition, the policy clearly states that a "battery" may occur even if the resulting injury was not "intended or expected." (Doc. 47, Attach. 1 at 49.) Accordingly, the Court finds that the policy's assault and battery provision still applies despite Defendant Brown's amendment of his complaint.[3]

Finally, Defendant Brown argues that the assault and battery provision is ambiguous because Plaintiff's amended complaint omitted the page of the policy's endorsement defining "assault" and "battery." (Doc. 54 at 12-15.) However, it is readily apparent that this omission is purely the result of Plaintiff's counsel's mistake when filing this action. A complete and accurate copy of the insurance policy, with the assault and battery endorsement intact, is part of the record in this case. (Doc. 47, Attach. 1 at 48-49.) Accordingly, the Court finds Defendant Brown's argument without merit.

---

[3] While the Court uses the policy's defined meanings of assault and battery, the Court notes that Defendant Woods's actions would still qualify as an assault and a battery even if the Court were to apply Georgia's legal definitions of the torts. See Eady v. Capitol Indem. Corp., 232 Ga. App. 711, 713, 502 S.E.2d 514, 515 (1998) (holding unintentionally injured plaintiff was victim of assault and battery because of transferred intent doctrine).

13

V.  SUBLIMIT COVERAGE

Defendants next argue that even if the assault and battery provision does apply, the coverage sublimit has not been exhausted. (Doc. 54 at 11-12, Doc. 58 at 3-4.) As originally delivered to Defendant Sega, the assault and battery endorsement stated that Plaintiff's liability was limited accordingly: "Per Occurrence or Each Common Cause: $50,000 Aggregate Limit: $25,000." (Doc. 47, Attach. 1 at 27.) Plaintiff later issued an amended endorsement that transposes these amounts to $25,000 per occurrence with an aggregate limit of $50,000. (Id., Attach. 1 at 48.) While this amended endorsement was not issued until February 2012, it includes an effective date of September 15, 2011. (Id., Attach. 1 at 31.) Nevertheless, Defendants argue that Plaintiff's duty to defend in the underlying suit must continue until its costs reach at least $50,000. Specifically, Defendants argue that the original endorsement's $50,000 per occurrence limit should be enforced as the conflicting occurrence and aggregate limits create an ambiguity in the policy that should be resolved in Defendant's favor. (Doc. 54 at 11-12, Doc. 58 at 3-4.)

The Court finds Defendants' arguments without merit. Any potential ambiguity in the original contract was resolved by the amended endorsement's more comprehensible modification. Under Georgia law, an insurance policy "includes all clauses, riders,

14

endorsements, and papers attached or issued and delivered for attachment to the contract or agreement and made a part of the contract or agreement." O.C.G.A. § 33-24-1. In addition, an endorsement's language controls where there is any conflict between it and the original policy because the endorsement is the more current expression of the parties' intent. See Utica Mut. Ins. Co. v. Dunn, 106 Ga. App. 877, 878 (1962). Defendants offer no argument that the endorsement is defective, either for lack of consideration or otherwise, and Defendants have not cancelled the policy. See Ga. Mut. Ins. Co. v. Ragan, 122 Ga. App. 56, 57, 176 S.E.2d 230, 231 (1970) (holding forbearance to cancel policy sufficient consideration to sustain modifying endorsement). As a result, the Court concludes the endorsement applies in full with regard to all its terms. See Dunham v. Grange Mut. Cas. Co, 115 Ga. App. 625, 626, 115 S.E.2d 690, 691-92 (1967) (giving effect to life insurance policy endorsements correcting amount of coverage even after death of insured). Accordingly, the Court finds Defendants' coverage limit for a single occurrence of assault and battery is $25,000 as described in the amended endorsement.

VI. WITHDRAWAL OF DEFENSE AND RECOUPMENT OF COSTS

The Court next turns to Plaintiff's request to withdraw its defense in the underlying suit and recoup its costs beyond the $25,000 sublimit. (Doc. 47 at 20-22.) The parties do not contest

that Plaintiff has already spent more than $25,000 on the underlying suit. The insurance policy states that once coverage is exhausted by Plaintiff's representation of Defendants, "[Plaintiff] will not defend or continue to defend any 'suit.'" (Doc. 47, Attach. 1 at 48.) Plaintiff additionally states that it expressly reserved its right to seek recoupment in a reservation of rights letter to Defendants. (Id. at 22.) In support of its argument for recoupment, Plaintiff points to the United States District Court for the Northern District of Georgia's decision in Illinois Union Ins. Co. v. NRI Constr. Inc., which held that an insurer was entitled to reserve its rights to recoup costs incurred defending claims "it had no duty to defend." 846 F. Supp. 2d 1366, 1377 (N.D. Ga. 2012).

Defendants do not dispute that Plaintiff may withdraw its defense if the Court determines, as it has here, that Plaintiff's coverage limit has been exhausted. However, Defendants argue strenuously that Plaintiff should be estopped from recouping its additional expenditures beyond the $25,000 sublimit even if there is no further duty to defend. First, Defendants Brown and Sega contend that Plaintiff's letter reserved only a right to recover costs expended in defense of non-covered claims. (Doc. 54 at 22; Doc. 58 at 14.) Defendants reason that this reservation of rights does not permit recoupment because Plaintiff's costs in the underlying suit were

16

incurred defending covered, but simply limited, claims. In addition, Defendants argue that Plaintiff's reservation of rights letter is ineffective because the policy itself does not provide for recoupment of costs. (Doc. 50 at 5-6; Doc. 58 at 12-13.) Finally, Defendant Sega urges the Court to adopt the reasoning of other courts that have found a right of recoupment to be against public policy. (Doc. 58 at 10-12.)

"For a reservation of rights to be effective, the reservation must be unambiguous; if it is ambiguous, the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured." World Harvest Church, Inc. v. GuideOne Mut. Ins. Co., 287 Ga. 149, 152-53, 695 S.E.2d 6, 10 (2010) (citations omitted). A word or phrase is ambiguous "when it is of uncertain meaning and may be fairly understood in more ways than one." Walton v. Datry, 185 Ga. App. 88, 94, 363 S.E.2d 295, 300 (1987) (quoting Dorsey v. Clements, 202 Ga. 820, 823, 44 S.E.2d 783, 787 (1947). Here, the reservation of rights letter states:

> [i]n the event it becomes evident that there is no coverage for the Underlying Lawsuit, SEGA, Revolutions Night Club, Mamedd, and Mr. Woods agree that [Plaintiff] may, and [Plaintiff] reserves the right to, recoup and recover any all [sic] attorneys' fees and/or defense costs incurred, expended, or associated

17

with SEGA's, Revolutions Night Club's, Mamedd's, and/or Mr. Woods' [sic] defense of non-covered claim(s).

(Doc. 47, Attach. 1 at 64.) Here, there is no question that the policy provides at least some coverage for the claims in the underlying suit. This is in direct contrast to the situation described in <u>Illinois</u>, where there was no coverage whatsoever for the defended claims. 846 F. Supp. 2d at 1377. As a result, the Court concludes that the letter could reasonably indicate Plaintiff reserved only a right to recoup its costs where the underlying claims entirely uncovered by the policy. Accordingly, construing any ambiguity in favor of Defendants, Plaintiff's Motion for Summary Judgment on this matter must be denied.

## VII. <u>PUNITIVE DAMAGES AND MEDICAL PAYMENTS</u>

Finally, Plaintiff moves the Court to declare that the policy excludes coverage for any punitive damages that may arise from the underlying suit as well as any medical payment coverage beyond $1,000. (Doc. 47 at 19.) However, all liabilities and any attendant damages have yet to be determined in the underlying suit. As a result, the Court finds the Plaintiff's arguments on the matter premature. Accordingly, Plaintiff's Motion for Summary Judgment with regard to these issues must be dismissed.

18

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 47) is **GRANTED IN PART, DENIED IN PART,** and **DISMISSED IN PART.** The Court hereby **DECLARES** that Defendant Revolutions is not an insured under the policy. Plaintiff's request to withdraw its defense of Defendants Sega, Mamedd, and Woods in the underlying suit is **GRANTED.** However, Plaintiff's request to recoup its already-expended costs is **DENIED.** Plaintiff's arguments with respect to its duty to indemnify are **DISMISSED.**

SO ORDERED this 28th day of March 2015.

WILLIAM T. MOORE, JR.,
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA